UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WORLDHOMECENTER.COM, INC.,

          Plaintiff,    **MEMORANDUM & ORDER**

 -against-           05 Civ. 3298 (DRH) (ETB)

THERMASOL, LTD,

          Defendant.
------------------------------------------------------------X

**Appearances:**

**LAWRENCE R. LONERGAN, PC**
Attorney for Plaintiff
275 Seventh Avenue, 25th Floor
New York, NY 10001

**JASPAN, SCHLESINGER, HOFFMAN LLP**
Attorneys for Defendant
300 Garden City Plaza
Garden City, NY 11530
By: Stanley A. Camhi, Esq.

**HURLEY, District Judge**

*INTRODUCTION*

  Defendant Thermasol ("Defendant" or "Thermasol") moves to dismiss the complaint brought by Worldhomecenter.com ("Plaintiff" or "WHC") for failure to state a claim, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). In the Complaint, WHC seeks an order enjoining Thermasol from engaging in further allegedly unlawful acts that violate the Sherman Act, 15 U.S.C. §§ 1, 2; the Donnelly Act, New York General Business Law § 340; and the New York Deceptive Trade Practices Act ("DTPA"), New York General Business Law § 349.

Plaintiff also seeks damages with regard to the alleged unlawful conduct. For the reasons set forth herein, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

*BACKGROUND*

In crafting the following summary of facts, the Court accepts all of factual allegations in the Complaint as true.

WHC is a corporation organized under the laws of New York, with its principal place of business in Lynbrook, New York. It is an on-line retailer of home improvement products, though its website, "Homecenter.com." Thermasol is a corporation organized under the laws of Delaware, with its principal place of business in Simi Valley, California. It manufactures and sells products for kitchen and bathrooms exclusively to its authorized dealers.

WHC is a distributor of Thermasol's products. It purchases Thermasol products from both exclusive and independent distributors for online resale to WHC's customers. Because of the relatively low overhead and maintenance associated with on-line retailing, WHC alleges that it is able to sell Thermasol products to consumers at sharp discounts compared to traditional display-room retailers.

WHC has distributed Thermasol products for several years. On November 12, 2004, Thermasol issued a Minimum Advertised Price ("MAP") program to its distributors that serves as the basis for the present suit. The letter, including typographical and grammatical errors, is reproduced below in its entirety:

> Dear Valued Customer,
>
> The Internet is a remarkable resource. It provides product information and awareness like nothing before. Yet, as amazing as the Internet is, it has one

> success-robbing negative . . . **margin erosion**. This erosion is unnecessary and diminishes your opportunities to profit from features and benefits consumers seek.
>
> Patented innovations such as; FastStart, ProHeat, and NoTouch, along with Ambiance and Lifetime Warranties were designed to give you, the ThermaSol Distributor, leading edge products that provide superior margins. And most importantly, you can feel confident knowing you are selling the very best.
>
> To no address this margin erosion would be irresponsible, hence we have created a Minimum Advertising Pricing (MAP) policy.
>
> **<u>Compliance to the MAP policy is mandatory beginning January 1, 2005.</u>**
>
> The Minimum Advertised Price is as follows:
>
> **ThermaSol products may not be advertised for less than 20% off latest (current) Price Schedule.**
>
> Thank you for your cooperation

(Compl., Ex. A.) This letter serves as the entire basis for the present suit. According to the Complaint, "Thermasol's MAP policy is specifically designed and intended to impede the sales of Thermasol goods over the Internet. The MAP policy reflects input from unhappy show-room distributors faced with the challenge of competing with Internet-only resellers such as Homecenter.com." (Compl. ¶ 22.) As such, it "effectively eliminates Plaintiff's ability to sell Thermasol's products at a discount." (*Id.* ¶ 23.) WHC further contends that "Thermasol's MAP policy is the result of multi-lateral communications between Thermasol and its exclusive distributors, and constitutes an agreement to restrain trade." (*Id.* ¶ 24.) WHC alleges that "Thermasol's MAP policy has resulted from complaints received from 'traditional channel' distributors regarding the perceived threat posed by Internet-only resellers . . . ." (*Id.* ¶ 30.)

WHC filed the present Complaint on July 13, 2005 based upon Thermasol's alleged unlawful restraint of trade and minimum price maintenance. On December 22, 2005, Thermasol

moved to dismiss the Complaint for failure to state a claim upon which relief could be granted. WHC opposed the motion, and Thermasol filed a reply memorandum.

*DISCUSSION*

I.   *12(b)(6) Standard*

The court may not dismiss a Complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly v. Bell Atlantic Corp*, 425 F.3d 99, 106 (2d Cir. 2005) (citations omitted); *see also King v. Simpson,* 189 F.3d 284, 286 (2d Cir. 1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). The Court must accept all factual allegations in the proposed Complaint as true and draw all reasonable inferences in favor of the plaintiff. *King*, 189 F.3d at 287; *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). At this stage, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Twombly*, 425 F.3d at 106 (citations and quotation marks omitted).

II.   *The Sherman Act Claim*

Thermasol moves to dismiss the Complaint on the grounds that the Complaint fails to allege that the allegations regarding the alleged agreement lack specificity. (*See* Def.'s Mem. at 7.) WHC opposes the motion on the grounds that the allegations in the Complaint "more than amply meet the minimum pleadings standards required by the Federal Rules." (Pl.'s Opp'n Mem. at 9.)

The requirements of Rule 8 "notice pleading" as applied to claims under Section 1 of the Sherman Act are relatively modest and straightforward. Section 1 proscribes "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce

among the several States, or with foreign nations." 15 U.S.C. § 1; *see also Twombly*, 425 F.3d at 112. Thus, a Section 1 plaintiff must allege that (1) the defendants were involved in a contract, combination, or conspiracy that (2) operated unreasonably to restrain interstate trade, together with the factual predicate upon which those assertions are made. *See Twombly*, 425 F.3d at 113; *see also Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95-96 (2d Cir.1998); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1059 (2d Cir. 1996). Under *Twombly*, in order to survive a motion to dismiss, an antitrust claimant must allege "the existence of a conspiracy and a sufficient supporting factual predicate on which that allegation is based." *Twombly*, 425 F.3d at 114. Though this hurdle is not high, "minimal requirements are not tantamount to nonexistent requirements." *Id.* at 109.

The Complaint repeatedly asserts, albeit in conclusory fashion, that the actions of Thermasol unreasonably restrain interstate trade. (*See, e.g.,* Compl. ¶ 20 ("[T]here has been a continuous and uninterrupted flow in interstate commerce of kitchen and bath products from Defendant's facilities in California and New Jersey to its authorized dealers throughout the United States . . . . [T]he unlawful activities of Defendant . . . have been within the flow of, and have substantially affected, interstate commerce"); *Id.* ¶ 30 ("[C]onsumers are deprived of the attractions and conveniences of purchasing products on line."). The MAP policy allegedly poses a significant obstacle to the distribution of Thermasol products over the internet, an internet distributor's ability to distribute those goods at lower prices, and, consequently, the consumer's ability to obtain those goods at lower prices. Thus, the Complaint does allege an unreasonable restraint on trade.

The only question then is whether the Complaint alleges a contract, combination, or conspiracy. Thermasol argues that WHC has failed to plead the "contract, combination, or conspiracy" prong of a Sherman Act violation. Relying upon *United States v. Colgate*, 250 U.S. 300, 307 (1919), and *Monsanto Co. v. Spray-Rite Service Corp*, 465 U.S. 752 (1984), Thermasol insists that "[t]he fact that a manufacturer may act in response to complaints received from others does not create an inference that the manufacturer's actions is the result of a concerted action or an agreement which would constitute a violation of the Sherman Act." (Def.'s Mem. at 5.) WHC replies that it has "gone beyond the purview of the *Colgate* precedent by alleging the existence of multi-lateral agreements between Thermasol and its traditional showroom distributors." (Pl.'s Opp'n Mem. at 10.)

According to the Complaint, "Thermasol's MAP policy is specifically designed and intended to impede the sales of Thermasol goods over the Internet. The MAP policy reflects input from unhappy show-room distributors faced with the challenge of competing with Internet-only resellers such as Homecenter.com." (Compl. ¶ 22.) WHC asserts that the MAP policy is the "result of multi-lateral communications between Thermasol and its exclusive distributors, and constitute[s] an agreement to restrain trade." (*Id.* ¶ 24.) WHC does not reference any particular "communication," however, nor does it suggest that any justification for its conclusion that the alleged communications "constituted" an agreement.

After *Twombly*, a trial court should be wary of dismissing antitrust complaints. In *Twombly*, the district court dismissed the complaint, concluding that the plaintiffs had failed to allege facts "suspicious enough to suggest that defendants are acting pursuant to a mutual agreement rather than their own individual self-interest." *Twombly*, 425 F.3d at 105. The Second

Circuit reversed, ruling that "short of the extremes of 'bare bones' and 'implausibility,' a complaint in an antitrust case need only contain the 'short and plain statement of the claim showing that the pleader is entitled to relief' that Rule 8(a) requires." *Id.* at 111. Thus, an allegation of "parallel conduct" that "would be anomalous in the absence of an agreement,"even where the plaintiff could point to no actual agreement, was held to be sufficient. *Id.* at 103.

In the present case, the allegations in the Complaint are sparse, but the allegations are plausible. WHC alleges that the traditional distributors of Thermasol products complained that internet-based distributors were ruining their market. As a result of these complaints, Thermasol allegedly issued the MAP policy in restraint of trade. The allegation is that Thermasol's actions were not independent, and that independent actions of this ilk would be anomalous in the absence of some agreement between Thermasol and its traditional distributors. The specifics of the complaints registered by the traditional distributors and the accordant agreement between those distributors and Thermasol were not divulged in the complaint, but the Court does not expect WHC to plead the details of secret conspiratorial conversations prior to discovery. As it stands, the Complaint does allege the existence of an agreement, rendering the Complaint adequate to survive a motion to dismiss.

III.  *Donnelly Act Claim*

Thermasol also moves to dismiss the Donnelly Act claim, essentially on the same grounds as its motion to dismiss the Sherman Act claim. (*See* Def.'s Mem. at 15-17.) According to the Donnelly Act, contracts, or agreements for monopoly or in restraint of trade are illegal and void for those monopolies "in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. General Business Law § 340(1). The Donnelly Act was patterned

after the Sherman Act and has been narrowly construed to encompass only those causes of action falling within the Sherman Act. *See State v. Mobil Oil Corp.*, 381 N.Y.S.2d 426, 427 (1976); *Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton*, 997 F. Supp. 340 (E.D.N.Y. 1998) (finding Donnelly Act is modeled after the Sherman Antitrust Act and is generally interpreted in accordance with federal precedent); *cf. Arnold Chevrolet LLC v. Tribune Co.*, 418 F.Supp.2d 172, 187 (E.D.N.Y. 2006). As a result, the Donnelly Act "should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result." *X.L.O. Concrete Corp. v. Rivergate Corp.*, 83 N.Y.2d 513, 518 (1994) (internal quotation marks omitted); *Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 244 n.8 (S.D.N.Y. 2003). Thermasol notes the similarities between the statutes, and grants that the "Donnelly Act should be construed in light of federal precedent." (Def.'s Mem. at 15.) As such, Thermasol simply urges the Court to dismiss WHC's Donnelly Act claim based on the same objections they raise to the Sherman Act claim. For the reasons set forth in connection with the latter claim, the Court declines to do so. *See Linens of Europe, Inc. v. Best Mfg., Inc.*, 03 Civ. 9612 (GEL), 2004 WL 2071689, *18 (S.D.N.Y. Sept. 16, 2004).

IV.     The DTPA Claim

Finally, Thermasol moves to dismiss the DTPA claim on the grounds that the complaint "does not identify what conduct engaged in by Thermasol was materially deceptive." (Def.'s Mem. at 19.) The DTPA prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service . . . ." N.Y. Gen. Bus. Law § 349(a). It contains a private right of action such that "any person who has been injured by reason of any

violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages . . . , or both such actions." N.Y. Gen. Bus. L. § 349(h); *see also Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 218 (2d Cir. 2003). For obvious reasons, the lynchpin of a DTPA claim is "deception": "The statute seeks to secure an honest market place where trust, and not deception, prevails." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 746 N.Y.S.2d 858 (2002); *see also Leider v. Ralfe*, 387 F. Supp. 2d 283, 295 (S.D.N.Y. 2005). Thus, an allegation of "[m]ere anticompetitive conduct alone will not suffice." *Leider*, 387 F. Supp. 2d at 295.

In the Complaint, WHC fails to allege a deceptive act by Thermasol. The MAP policy, though alleged to be anti-competitive is not alleged to be deceptive. Perhaps the motivations behind the policy were not fully disclosed, but the Complaint fails to allege that anything about the policy deceives the public. As such, it is allegedly anticompetitive conduct that is not premised on consumer deception, thereby falling outside the ambit of the statute. *See id.* Accordingly, the Court grants Thermasol's motion to dismiss the DTPA Act claim.

## *CONCLUSION*

In accordance with the foregoing, the Court DENIES Thermasol's motion to dismiss the Sherman Act and Donnelly Act claims, but GRANTS the motion as to the New York Deceptive Trade Practices Act.

**SO ORDERED.**

Dated: Central Islip, New York
July 10, 2006

_____/s/_____
Denis R. Hurley
Unites States District Judge